*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0284p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

In re: REFRIGERANT COMPRESSORS
ANTITRUST LITIGATION (13-1608),

                         *Movant.*

_____

GATEWAY KGMP DEVELOPMENT,
INCORPORATED, et al.,

                         *Plaintiffs*,

AIR COOLING ENERGY CORPORATION (13-
1615); MARK A. BARASH (13-1617);
NATHAN LEVI ESQUERRA (13-1624); F.G.
FARAH AND PARTNERS, LLC (13-1625);
STRONG ELECTRIC (13-1628); and SAAD
WHOLESALE, INC. (13-1631),

                         *Plaintiffs-Appellants*,

        *v.*

TECUMSEH PRODUCTS COMPANY, et al.,
                         *Defendants-Appellees.*

Nos. 13-1608/ 1615/ 1617/
1624/ 1625/ 1628/ 1631

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
2:09-md-02042—Sean F. Cox, District Judge.

Decided and Filed: September 25, 2013

Before: BATCHELDER, Chief Judge; SUTTON, Circuit Judge; HOOD, District Judge.[*]

_____

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

––––––––––––––––

**OPINION**

––––––––––––––––

SUTTON, Circuit Judge.  After the judicial panel on multidistrict litigation brought these plaintiffs and their separate lawsuits together, *see* 28 U.S.C. § 1407, many of the plaintiffs elected to consolidate all of their claims in a single complaint.  The district court entered an order dismissing the claims raised by some of the plaintiffs.  But the order left intact several claims raised by other plaintiffs in the same complaint.  Does this order amount to a "final" decision from which the dismissed plaintiffs may appeal? 28 U.S.C. § 1291.  We hold that it does not and dismiss the appeal for lack of jurisdiction.

Plaintiffs normally may decide where to file their lawsuits.  But when different plaintiffs file similar cases in different districts, keeping the cases separate forces district court judges to duplicate each other's labors.  Congress empowered a federal multidistrict panel to address this problem by transferring overlapping cases to a single district if the cases involve "one or more common questions of fact" and if the transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of [the] actions."  28 U.S.C. § 1407(a).  The transfer unifies the cases for "pretrial proceedings."  *Id.*  Once these proceedings conclude, the multidistrict panel *must* remand each transferred case that has not "been previously terminated" to the originating district for trial.  *Id.*; *see also Lexecon v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) (holding that, because the remand requirement is absolute, the transferee court may not invoke the change-of-venue statute to assign transferred cases to itself for trial).

Today's multidistrict controversy arose when manufacturers of compressors—devices that cool the air in refrigerators and the water in water coolers—allegedly violated federal antitrust laws by fixing prices and dividing markets. Several buyers filed lawsuits against the manufacturers in district courts across the

country.  The plaintiffs included both "direct purchasers" (those who bought their compressors from the manufacturer) and "indirect purchasers" (those who bought their compressors from intermediaries such as retailers).

The multidistrict panel centralized pretrial proceedings in the Eastern District of Michigan.  Once in the Eastern District, the indirect purchasers filed a single "consolidated amended complaint" that combined all of their allegations.  The direct purchasers did likewise.

The Eastern District dismissed some but not all of the claims in the indirect purchasers' complaint.  As a result, six of the indirect purchasers saw all of their claims dismissed.  All  six of them appealed.  They simultaneously asked the district court to enter a final judgment under Civil Rule 54(b) or to certify an interlocutory appeal under 28 U.S.C. § 1292, but the district court denied both requests.  The compressor manufacturers moved to dismiss the appeal for lack of jurisdiction.

For the most part, a party may appeal only a district court's "final decisions." 28 U.S.C. § 1291.  When a single action presents multiple claims or involves multiple parties, a district court ruling that disposes of only some claims or only some parties is ordinarily not "final."  This general rule curbs the inefficiency and delay of multiple appeals from a single action.

But what constitutes a single action for purposes of § 1291?  At least three broad-brush scenarios exist.  The first is the most frequent and the easiest to resolve.  When a plaintiff brings different claims—or for that matter when multiple plaintiffs bring different claims—in the *same complaint*, they have brought just one action, and a ruling that fails to dispose of the whole complaint is not final.  *See, e.g.*, *Talamini v. Allstate Ins. Co.*, 470 U.S. 1067 (1985) (mem.); *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 431–32 (1956).

Things get trickier with the second possibility—when separate actions filed by separate plaintiffs in the *same district court* become consolidated.  Some federal

appellate courts have concluded that, after the cases are consolidated, they retain their separate identities, others that they always merge, and still others that they sometimes merge and sometimes remain distinct. *See* 15A Charles Alan Wright et al., *Federal Practice & Procedure* § 3914.7 (2d ed. 1992). Our circuit's test focuses on how the consolidation occurred. When a court consolidates two cases on its own, we have concluded, the consolidated cases generally "remain separate actions;" thus, a district court's disposal of one of the cases normally supports an immediate appeal, even if the other consolidated case remains live. *Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 551 (6th Cir. 1994). But when the plaintiff files an amended complaint that unifies claims initially brought separately, the cases merge into a single action so far as § 1291 is concerned; one claim cannot come up on appeal until the district court disposes of the whole complaint or the district court provides a Rule 54 certification. *See Klyce v. Ramirez*, 852 F.2d 568, 1988 WL 74155, at *3 (6th Cir. 1988) (unpublished).

This distinction respects the general rule that, "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007). The test also makes sense. An amended complaint supersedes an earlier complaint for all purposes. *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 456 n.4 (2009). If combining claims in the initial complaint unifies them into a single action, combining claims in an amended complaint must unify them into a single action as well. On top of that, the test is easy to administer, and "administrative simplicity is a major virtue in a jurisdictional statute." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). An indeterminate finality line would waste judicial resources by routinely spurring protective appeals from non-final orders. Thus, if this were a run-of-the-mine single-district lawsuit—if all of the plaintiffs had filed their initial complaints in the Eastern District of Michigan—it would be easy to resolve. By replacing the separate original complaints with a consolidated amended complaint, the plaintiffs would have combined their lawsuits into one action. Because the district court's order did not

dispose of all the parties and all the claims in the amended complaint, its order would be non-final and non-appealable.

That leaves the third possibility, the one presented here: the plaintiffs filed separate actions in *separate district courts*, the multidistrict panel consolidated the cases in one district, and the plaintiffs filed a new complaint with respect to the consolidated cases. What then? We have never addressed this question before, and to our knowledge neither has any other circuit court. But we see no reason to treat scenario three differently from scenario two. That is to say, if plaintiffs file a consolidated complaint after a multidistrict transfer, an order disposing of some of the claims or parties in the consolidated complaint is non-final (barring a Rule 54(b) judgment) and non-appealable (barring a § 1292 certification).

The six buyers resist this interpretation. They first claim that, after the multidistrict transfer, they did not file a consolidated complaint but only an administrative document with no legal force. We do not agree, though the explanation requires a brief digression.

Because each transferred case comes with its own pleadings, a multidistrict transfer threatens to submerge the transferee district court in paper. A common solution to this difficulty, one adopted in this case, is for the plaintiffs to assemble a "master complaint" that reflects all of their allegations. In many cases, the master complaint is not meant to be a pleading with legal effect but only an administrative summary of the claims brought by all the plaintiffs. When plaintiffs file a master complaint of this variety, each individual complaint retains its separate legal existence. *See, e.g.*, *In re Nuvaring Prods. Liab. Litig.*, No. 4:08MD1964 RWS, 2009 WL 2425391, at *2 (E.D. Mo. Aug. 6, 2009) ("[T]he filing of the master consolidated complaint in this action was simply meant to be an administrative tool to place in one document all of the claims at issue in this litigation. Neither Plantiffs . . . nor I . . . contemplated that Rule 12(b) motion practice would be pursued . . . against the master complaint."); *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 142 (E.D. La. 2002) ("[T]he master complaint [filed

in this case] should not be given the same effect as an ordinary complaint. Instead, it should be considered as only an administrative device to aid efficiency and economy.").

But, in other cases, the court and the parties go further. They treat the master complaint as an operative pleading that supersedes the individual complaints. The master complaint, not the individual complaints, is served on defendants. The master complaint is used to calculate deadlines for defendants to file their answers. And the master complaint is examined for its sufficiency when the defendants file a motion to dismiss. *See, e.g.*, *In re Katrina Canal Breaches Litig.*, 309 F. App'x 836, 838 (5th Cir. 2009) ("[The plaintiff's] individual complaint was superseded, and . . . any arguments or claims that appear in [the] individual complaint but not in the Master Complaint were waived."); *In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, MDL No. 2272, 2012 WL 3582708, at *4 (N.D. Ill. Aug. 16, 2012) ("MDL courts have entertained motions to dismiss 'master' or 'consolidated' complaints . . . ."); *see generally* Diana E. Murphy, *Unified and Consolidated Complaints in Multidistrict Litigation*, 132 F.R.D. 597 (1991).

The use of one term to describe two different types of pleadings leads to confusion. Just so here. Plaintiffs often file something labeled a "master complaint" without saying whether they mean to file an operative pleading or an administrative summary, prompting satellite litigation about the status of the documents submitted to the court. *See, e.g.*, *Nuvaring*, 2009 WL 2425391, at *1–*2; *Propulsid*, 208 F.R.D. at 140–42. To ward off confusion, lawyers might do well to make plain what they have in mind when they use the label "master complaint." One option is to use "administrative complaint" and "administrative answer" for legally inert summaries of pleadings, and to use "consolidated complaint" and "consolidated answer" for pleadings meant to have legal effect.

We agree with the Eastern District, *see* R. 384 at 7, that the master complaint filed in this case was an operative pleading—a consolidated complaint that is—that superseded any prior individual complaints. The buyers concede that they served the defendants with the master complaint, not with earlier individual complaints. The court

fixed the deadline for the defendants to answer by looking at the date of the master complaint's filing. The buyers treated the master complaint as a real complaint when they asked the Eastern District for leave to amend it under Civil Rule 15. And, perhaps most importantly, when arguing about or adjudicating the defendants' motions to dismiss, the parties and the court looked only at the master complaint. The buyers in short may not sidestep customary jurisdictional rules by saying that the complaint at hand lacked legal effect.

The six buyers persist that, in the context of multidistrict litigation, we should abandon a complaint-focused test for determining whether separate actions have become one. But while the rules drafters or Congress may wish to create a special final order rule for multidistrict cases, we do not think this case is the time or the place for doing so.

In the first place, § 1291 is one statute, and it sets forth one final-order rule. The finality requirement warrants uniform treatment, not a meaning that varies from case to case. *Cf. In re Lindsey*, — F.3d —, No. 12-6362, 2013 WL 4055273, *2 (6th Cir. Aug. 13, 2013) ("[W]e see no good reason to have 'final' mean one thing in [bankruptcy] cases and another in [ordinary civil cases].").

Developing special jurisdictional rules for multidistrict cases would also create administrative problems. Although "competent counsel should readily recognize" them, finality defects are easy to miss—which is why "this procedural error . . . has been frequently overlooked by a large number of experienced attorneys and judges." *Talamini*, 470 U.S. at 1069 (Stevens, J., concurring). We would only proliferate unauthorized exercises of appellate jurisdiction by developing complex finality rules that vary from context to context. Far better to keep things simple.

What at any rate would be the alternative? The six buyers suggest looking at their original individual complaints rather than at the new consolidated complaint. But the new complaint superseded the old ones, and it makes little sense to ascertain appellate jurisdiction by looking at the ghosts of departed pleadings. Besides, when

deciding whether the district court properly granted a motion to dismiss, we would have to look at the new complaint anyway. How odd it would be to write an opinion that talks about one complaint in the jurisdiction section and another in the merits section. And what would we do if the post-transfer consolidated complaint added new claims, or worse still new parties, never mentioned in the pre-transfer individual complaints?

The six buyers' main reason for treating multidistrict cases differently is that they would experience hardship if they had to wait until the end of pretrial proceedings to appeal. While we appreciate the point, it does not carry the day. For one, hardship by itself offers no basis for disregarding a jurisdictional rule established by statute. *See Bowles v. Russell*, 551 U.S. 205 (2007). For another, rulemaking under §§ 1292(e) and 2072, not judicial expansion of the concept of finality, is the "preferred means for determining whether and when prejudgment orders should be immediately appealable." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 113 (2009). For a final reason, other routes to an appellate court ordinarily will reduce any hardship that plaintiffs might face. Civil Rule 54(b) permits the district court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties" when it "expressly determines that there is no just reason for delay." And § 1292(b) permits the district court to certify an interlocutory appeal when "[its] order involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation." The Eastern District concluded that these criteria had not been met in the case at hand, suggesting that a competing interest—the inconvenience of piecemeal appeals—outweighs any hardship to the plaintiffs.

The six buyers add that the failure to permit their appeal will deprive plaintiffs of important rights that the multidistrict statute protects. But these arguments target holdings broader than the one we reach today. We do not hold that a multidistrict transfer alone—or even a multidistrict transfer followed by the filing of an administrative summary of complaints—unifies the plaintiffs' cases into a single action.

Our holding rests on the *plaintiffs'* decision to file a *legally operative* combined complaint.

Nor do we hold that the filing of a consolidated complaint in a multidistrict case merges the plaintiffs' actions *permanently*.  Our decision is limited to the duration of the pretrial proceedings; we do not question the principle that, when the pretrial phase ends and cases not yet terminated return to their originating courts for trial, the plaintiffs' actions resume their separate identities.  *Cf. Federal Practice & Procedure* § 3914.7 (suggesting that, when one part of a once-unitary case is severed and "transferred to a different court," that part should be considered a separate action for the purpose of determining finality).

For these reasons, we grant the motion to dismiss the appeal for lack of jurisdiction.